UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LOLA MCCREARY OBO N.O.C.M., §
  §
      Plaintiff, § Case # 1:18-cv-1336-DB
  §
v. § MEMORANDUM DECISION
  § AND ORDER
COMMISSIONER OF SOCIAL SECURITY, §
  §
      Defendant. §

## INTRODUCTION

Plaintiff Lola McCreary ("Plaintiff") brings this action on behalf of N.O.C.M., a child under the age of eighteen, pursuant to Title XVI of the Social Security Act (the "Act"). Plaintiff seeks review of the final decision of the Commissioner of Social Security (the "Commissioner") denying N.O.C.M.'s application for supplemental security income ("SSI"). *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the case is before the undersigned in accordance with a standing order. *See* ECF No. 13. Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 9, 11. Plaintiff also filed a reply. *See* ECF No. 12. For the reasons set forth below, Plaintiff's motion (ECF No. 9) is **DENIED**, and the Commissioner's motion (ECF No. 11) is **GRANTED**.

## BACKGROUND

On August 14, 2012, Plaintiff protectively filed an application for SSI child's benefits on behalf of her granddaughter, N.O.C.M., alleging disability beginning May 17, 2002, based on the alleged impairment of ADHD. Transcript ("Tr.") 165. The Application was initially denied May 11, 2015, after which Plaintiff timely requested a hearing. Administrative Law Judge ("ALJ") Robert Harvey ("ALJ Harvey") conducted an administrative hearing in Buffalo, New York, on February 10, 2014. Tr. 42. N.O.C.M. appeared and testified at the hearing and was represented by

Felice Brodsky, an attorney. *Id*. On March 19, 2014, ALJ Harvey issued an unfavorable decision, finding N.O.C.M. not disabled. Tr. 51. After the Appeals Council denied Plaintiff's request for review on March 29, 2016 (Tr.,1-4), Plaintiff brought a lawsuit in this Court, which resulted in a stipulation by the parties to remand the case, with a judgment entered on February 15, 2017. *See McCreary v. Colvin*, Case No. 1:16-cv-00418-LJV-HKS, ECF No. 20.

The Appeals Council then remanded the case for a new hearing to update the medical record, obtain educational records, consider the severity of N.O.C.M.'s impairments and any functional limitations, and, if necessary, to obtain expert testimony. Tr. 441-44. Thereafter, ALJ William Weir (the "ALJ") held an administrative hearing in Buffalo, New York, on May 11, 2018. Plaintiff appeared and testified at the hearing and was represented by Jeanne Murray, an attorney. Tr. 376. The ALJ issued an unfavorable decision on August 14, 2018, finding N.O.C.M. not disabled under section 1614(a)(3)(C) of the Act. Tr. 350-69. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## **LEGAL STANDARD**

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II. The Sequential Evaluation Process

Individuals under eighteen years old are considered disabled when the individual "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(i). In evaluating disability claims in children, the Commissioner is required to use the three-step process promulgated in 20 C.F.R. § 416.924. The first step requires the ALJ to determine whether the child is engaged in "substantial gainful activity." *See* 20 C.F.R. § 416.924(a). The second step requires the ALJ to determine whether the child has any severe impairments, defined as anything that causes "more than minimal functional limitations." *Id*. Finally, the ALJ determines whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of a listed impairment. *Id*. If the ALJ finds that the child's impairment or combination of impairments meets or equals a listing, the child is then considered disabled. 20 C.F.R. §§ 416.924(d)(1).

In determining whether the child's impairment or combination of impairments meets or medically equals a listing, the ALJ must assess the child's functioning in six domains:

1. Acquiring and using information;

2. Attending and completing tasks;

3. Interacting and relating with others;

4. Moving about and manipulating objects;

5. Caring for yourself; and

6. Health and physical well-being.

20 C.F.R. § 416.926a(b)(1). The child is classified as disabled if the child has a "marked" limitation in any two domains of functioning or an "extreme" limitation in any one domain. 20 C.F.R. §§

416.926a(d). A "marked" limitation exists when the impairment or cumulative effect of the impairments "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation is an impairment which "interferes very seriously" with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). If the child has an impairment that meets, and medically or functionally equals the listings, and the impairment meets the Act's duration requirement, the ALJ will find the child disabled. 20 C.F.R. § 416.924(d).

## **ADMINISTRATIVE LAW JUDGE'S FINDINGS**

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his August 14, 2018 decision:

1. The claimant was born on May 17, 2002. Therefore, she was a school-age child on August 14, 2012, the date application was filed, and is currently an adolescent (20 CFR 416.926a(g)(2));

2. The claimant has not engaged in substantial gainful activity since August 14, 2012, the application date (20 CFR 416.924(b) and 416.971 *et seq.*);

3. The claimant has attention deficit hyperactivity disorder ("ADHD"), which constitutes a severe impairment (20 CFR 416.924(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926);

5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a);

6. The claimant has not been disabled, as defined in the Social Security Act, since August 14, 2012, the date the application was filed (20 CFR 416.924(a)).

Tr. at 350-69.

Accordingly, the ALJ determined that, for the application for SSI, protectively filed on August 14, 2012, N.O.C.M.is not disabled under section 1614(a)(3)(C) of the Act. Tr. 369.

## ANALYSIS

Plaintiff asserts a single point of error. Plaintiff argues that the ALJ did not properly evaluate four of the six domains described above: (a) acquiring and using information; (b) attending and completing tasks; (3) interacting with others; and (4) caring for oneself. Plaintiff contends that the evidence supported at least marked limitations in all of these domains. *See* ECF No. 9-1 at 1.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record and the ALJ's decision, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff had no limitation or less than marked limitation in these four domains, and the ALJ thoroughly discussed the evidence that supported his findings.

**a) Acquiring and using information domain.**

Acquiring and using information concerns how well a child is able to acquire or learn information, and how well a child uses the information she has learned. This domain involves how well children perceive, think about, remember, and use information in all settings, which include daily activities at home, at school, and in the community. 20 CFR 416.926a(g) and SSR 09-3p.

The ALJ found that N.O.C.M has no limitation in acquiring and using information. Tr. 361. The ALJ noted that N.O.C.M had been provided with a 504 Plan in elementary school because she was distractible, which interfered with her ability to remain focused and complete tasks in a timely

5

manner. Tr. 361, 171-79. The Plan provided extra time to complete assignments, as well as testing accommodations, such as extra time to complete tests, tests administered in a separate location to minimize distractions, and test directions read to her. Tr. 361. He also discussed the assistance N.O.C.M. was receiving through an individualized education program ("IEP"). Tr. 361-362. Although Plaintiff complains about the ALJ's discussion of N.O.C.M.'s IQ scores, the ALJ discussed these scores and noted the accuracy of some of them was questionable according to the examiners. Tr. 361-62. However, he concluded that the scores generally showed that N.O.C.M. was functioning in the average to below average range. *Id*. Thus, the results did not demonstrate limitations in this domain. As the ALJ noted, N.O.C.M was passing all of her classes; she did not have to repeat any grades; and notes from her teachers, as well as treatment notes, indicated that she had no gross cognitive impairment. Tr. 361-362. This evidence as a whole supported the ALJ's finding that N.O.C.M. did not have any limitations in this domain.

Although Plaintiff cites evidence that she contends showed N.O.C.M. had limitations in this domain, the question is not whether there is evidence to support disability; it is whether there is "more than a scintilla" of evidence supporting the ALJ's decision. *Moran*, 569 F.3d at 112. As discussed above, there is such evidence. Moreover, even if the evidence demonstrated some limitation in this domain, that would not be enough, as Plaintiff must produce evidence showing marked, i.e., more than moderate, limitation in at least two functional domains. *See* 20 C.F.R. §§ 416.926a(d).

   b) **Attending and completing tasks domain.**

This domain considers how well a child is able to focus and maintain attention, and how well she is able to begin, carry through, and finish activities, including the mental pace at which she performs activities and the ease of changing activities. Attending and completing tasks also

refers to a child's ability to avoid impulsive thinking and her ability to prioritize competing tasks and manage her time. 20 CFR 416.926a(h) and SSR 09-4p.

Here, the ALJ reasonably found that N.O.C.M. had a less than marked limitation in attending and completing tasks. Tr. 362. The ALJ acknowledged that N.O.C.M. had school accommodations, but these accommodations did not show that she had more than moderate limitations in this domain. The ALJ noted that medications helped with N.O.C.M.'s ability to maintain attention, which was generally good. Tr. 362, 244-299, 300-309, 692-733. N.O.C.M.'s treating sources observed that she was attentive with medication compliance. Tr. 362, 538-564, 344-299. The ALJ also noted that consulting psychologist Susan Santarpia, Ph.D. ("Dr. Santarpia"), reported that even though N.O.C.M. had not taken her medications prior to that evaluation, her attention and concentration were age appropriate. Tr. 362, 300-309.

Her teacher reported that N.O.C.M. almost always had a short attention span and was easily distracted, but she completed assignments on time with redirection and directions restated for clarification and would ask to make up missed assignments. Tr. 362, 209-232, 539-564, 965-979. However, her teachers noted in 2017 that there was a period when she was not completing her schoolwork on a regular basis due to social issues and "drama." Tr. 363. While Plaintiff cites a treatment plan to improve her attention or task completion (*see* ECF No. 9-1 at 21), the actual treatment notes show that N.O.C.M.'s attention and concentration were generally good (Tr. 776). Based on the foregoing, the ALJ reasonably assessed that N.O.C.M. had less than a marked limitation in this domain.

    c) **Interacting and relating with others domain.**

This domain considers how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others. Interacting and

7

relating with others relates to all aspects of social interaction at home, at school, and in the community. Because communication is essential to both interacting and relating, this domain considers the speech and language skills children need to speak intelligibly and to understand and use the language of their community. 20 CFR 416.926a(i) and SSR 09-5p.

The ALJ determined that N.O.C.M. has less than marked limitation in interacting and relating with others. The ALJ properly weighed the evidence and reasonably concluded that N.O.C.M. has less than marked limitations. Tr. 364. Dr. Santarpia reported N.O.C.M.'s demeanor and responsiveness to questions was cooperative, and her manner of relating and overall presentation was age appropriate. Tr. 364. The ALJ also noted that treating sources reported that her behavior was socially appropriate, and her speech and language skills were age appropriate. Tr. 364.

The ALJ also considered that N.O.C.M. reported having friends in school. Tr. 364. Her teachers reported that she had many friends and had peer relationships that were typical to fifth grade students, such as gossiping and relational aggression. *Id*. Her teacher also noted that the claimant demonstrated greater ability to remove herself from these negative peer situations. *Id*. Although, her teachers reported that N.O.C.M. often acted without thinking, and sought attention through behaviors such as, trouble staying seated, bothering other children when they were working, disrupting other children's activities and schoolwork, interrupting others when they were speaking, not waiting to take her turn, and acting out of control, teachers noted that she did not otherwise exhibit any behavior problems and liked to help her teachers as well as help other students who were having problems with their schoolwork. Tr. 364-65. The ALJ also noted there was no record of any school suspensions. *Id*.

In addition, contrary to Plaintiff's contentions, the ALJ considered that N.O.C.M and her family alleged that she had a low frustration tolerance and angered easily; exhibited temper

8

outbursts; got into physical fights; and did not listen. Tr. 365. However, as the ALJ noted, N.O.C.M.'s treating psychiatrist Jamie Pabilonia, M.D. ("Dr. Pabilonia"), stated that it was clear that her behavior was an intentional action and not from a mood disorder. Tr. 365, 248. Moreover, at the hearing, N.O.C.M. admitted that she got along well with her co-workers and supervisors, as well as her grandparents. Tr. 407-408. The ALJ acknowledged this conflicting evidence, but he properly weighed it and concluded that as a whole, it demonstrated less than marked limitations in this domain for the reasons noted above and in the ALJ's decision. Tr. 364-65.

    **d) Caring for yourself domain.**

This domain considers how well a child maintains a healthy emotional and physical state, including how well a child satisfies her physical and emotional wants and needs in appropriate ways. This includes how the child copes with stress and changes in the environment and how well the child takes care of her own health, possessions, and living area. 20 CFR 416.926a(k) md SSR 09-7p. The ALJ found no limitation in N.O.C.M.'s the ability to care for herself.

As the ALJ noted, N.O.C.M. had no problems with personal care activities. Tr. 367. He also noted that N.O.C.M.'s school noted that she demonstrated age-appropriate hygiene, and her teachers reported that she sought help when needed. Tr. 367. He also considered that the school psychologist noted that the Adaptive Skills scale suggested that N.O.C.M. was functioning within the average range. Tr. 367. The ALJ also noted that she assisted with household chores, but her family limited her travel in the neighborhood independently. Tr. 367.

The ALJ also discussed N.O.C.M.'s history of cutting herself when upset; however, he noted that she stated in early 2018 that she had not engaged in this activity for a long time. Tr. 367. He also noted that at times, she felt down and depressed. Tr. 367. The ALJ also noted that N.O.C.M.'s family took her to the emergency room in January 2017 alleging that she threatened to kill herself during a fight with her mother, but once at the hospital she denied being suicidal. Tr.

367, 771. In January 2018[1] and February 2018, her mother and grandmother brought her to the emergency room for an overdose of over-the-counter medications. Tr. 367, 736, 766. In January 2018, she reported swallowing an entire bottle of NyQuil, but the record noted no evidence of NyQuil ingredients antihistamine or Acetaminophen in her system. Tr. 757. In February 2018, she reported taking ten Midol pills, six Melatonin pills, "Tussin (1 swig)," "Azo X 2," and "Ibuprofen 200 mg X 8." Tr. 736. As the ALJ noted, N.O.C.M. was struggling with a breakup, as well as having a fight with her sister and being abused by her mother, but she denied being suicidal. *Id*.

Her mother alleged that N.O.C.M. had a tendency to lie and accused her mother and her boyfriend of abuse on a number of occasions, causing Child Protective Services to open several investigations. Tr. 367. Treating and examining sources observed that N.O.C.M.'s insight and judgment were generally age appropriate; however, they were rated as fair to poor when she was brought to the emergency room for these suicide attempts. Tr. 369. While the record indicated that N.O.C.M. had a difficult time in early 2018 due to situational factors, it did not demonstrate limitations in this domain, especially for the requisite 12-month durational period. Instead, the record showed generally that N.O.C.M. had no problems with personal care activities. Tr. 158, 300-301, 209-232, 965-980. She demonstrated appropriate hygiene, and sought help when needed, and on the adaptive skills scale, she was functioning within the average range. Tr. 209-232, 545-564, 968-981.

Plaintiff disagrees with the ALJ's decision but has not identified any probative evidence the ALJ should have considered and failed to do so. Although Plaintiff may disagree with the ALJ's conclusion, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise."

---

[1] Although the ALJ decision states "January 2008" (Tr. 367) this appears to be a typographical error, as the records cited reflect that the emergency room visit occurred in January 2018 (Tr. 771).

*Morris v. Berryhill*, No. 16-02672, 2018 WL 459678, at *3 (2d Cir. Jan. 18, 2018) (internal citations and quotations omitted). That is not the case here. The ALJ reasonably determined that N.O.C.M. did not have two marked limitations or one extreme limitation in functioning.

As discussed above, the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would have to conclude otherwise." *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012). The question is not whether there is substantial evidence to support Plaintiff's position, but whether there is substantial evidence to support the ALJ's decision. *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013). Thus, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). The Court, accordingly, finds no error in the ALJ's determination that N.O.C.M. is not disabled.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 11) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE